IN THE MATTER OF THE APPLICATION OF PEOPLES BANK OF MONTVALE FOR A CHARTER FOR A BANK TO BE LOCATED AT 80 CHESTNUT RIDGE ROAD, IN THE BOROUGH OF MONTVALE, COUNTY OF BERGEN AND STATE OF NEW JERSEY.

COUNTY TRUST COMPANY, OBJECTOR-APPELLANT, v. HORACE J. BRYANT, JR., COMMISSIONER OF BANKING AND INSURANCE OF THE STATE OF NEW JERSEY AND PEOPLES BANK OF MONTVALE, RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued March 2, 1970—Decided July 14, 1970.

142

Before Judges GOLDMANN, LEWIS and MATTHEWS.

*Mr. Edwin C. Landis, Jr.* argued the cause for appellant (*Messrs. Meyner and Wiley,* attorneys; *Mr. John R. Kelly,* of counsel; *Mr. Thomas D. Hogan,* on the brief).

*Mr. Peter G. Banta* argued the cause for respondent (*Messrs. Winne & Banta,* attorneys).

*Mr. Arthur J. Sills,* Attorney General, filed a statement in lieu of brief on behalf of the Commissioner of Banking and Insurance (*Mr. Joel L. Shain,* Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

GOLDMANN, P. J. A. D. County Trust Company, objector, appeals from a determination of the Commissioner of Banking and Insurance granting a charter to the Peoples Bank of Montvale. This case is another in a series of protracted controversies involving the Branch Banking Act of 1968 (*L.* 1968, *c.* 415), approved January 17, 1969 and effective six months thereafter, July 17, 1969.

An important aspect of the act was section 6 (*N. J. S. A.* 17:9A–3.1), whose effect was to prohibit affiliate banks, theretofore permissible in this State. *In re Kenilworth State Bank,* 49 *N. J.* 330, 339–340 (1967). Section 6 provided that "No officer, director or employee of any bank may be, directly or indirectly, an incorporator of another bank." This and section 1 (*N. J. S. A.* 17:9A–19(B)(3)), the so-called "home office protection" provision, have resulted in a race against time to gain banking advantage in communities throughout the State, and a resort to our courts to preclude approval of a banking charter, *e. g., In re Kenilworth State Bank,* above; *In re Springfield State Bank,* 107 *N. J. Super.* 230 (App. Div. 1969), certif. den. 55 *N. J.* 312 (1970); and *In re Peoples Bank of Ridgewood,* 109 *N. J. Super.* 149 (App. Div. 1970).

Peoples Bank of Montvale submitted its application for a bank charter, together with its certification of incorporation dated February 9, 1968, months before the passage of the Branch Banking Act by the Legislature and its approval by the Governor on January 15, 1969. The required statutory hearings on the application were held pursuant to

*N. J. S. A.* 17:9A–10 and continued over eight days, the last hearing date being April 8, 1969, at which time the hearing officer permitted oral argument. After reviewing the record, and particularly the economic feasibility study prepared by Herbert H. Smith Associates, the Commissioner concluded that (1) a home-based commercial bank in Montvale was desirable; (2) there is a substantial likelihood of a dramatic increase in populaton in the Montvale area which will benefit the proposed bank and all competing banking facilities in the area; (3) there is sufficient population and industrial and commercial activity in the area to justify the existence of the proposed bank, and industrial activity is likely to increase substantially within the next decade; (4) the trade area delineated in the economic feasibility study was reasonable; (5) projections of deposits were reasonable and based upon normal expectations; (6) the existing banking facilities in the primary trade area or immediately outside thereof would not be harmed by the establishment of the proposed bank, and (7) "the proposed institution will serve the public interest and * * * it affords reasonable promise of successful operation."

The Commissioner stated that it was understood that "the officers who will have control or supervision of the bank's operations, and acceptable to me, will be engaged prior to the request for a certificate of authority to commence business." On October 2, 1969 there was a continuation to ascertain the qualifications and fitness of the chief executive officer. See *N. J. S. A.* 17:9A–11(D)(3). In a supplementary determination dated October 24, 1969 the Commissioner found that the person proposed as president and chief executive officer of the Peoples Bank of Montvale possessed the required qualifications, experience and character.

We note that the objector failed either to produce or offer any negative evidence. Nowhere in its main brief, supplemental brief or reply brief does the objector as much as suggest that there is not substantial evidence to support the Commissioner's findings and conclusions. That being

so, his determination will not be upset, absent any showing that it was arbitrary, capricious or unreasonable, or lacked fair support in the evidence, or violated explicit or implicit legislative policies. *In re Howard Savings Institution of Newark,* 32 *N. J.* 29, 52–54 (1960) ; *cf. Campbell v. Dept. of Civil Service,* 39 *N. J.* 556, 562 (1969). Indeed, we give due regard to the Commissioner's expertise regarding the economic feasibility of a proposed bank. *In re Kenilworth State Bank,* above, 49 *N. J.* at 334; *In re State Bank of Plainfield,* 61 *N. J. Super.* 150, 158 (App. Div. 1960).

County Trust Company's attack upon the grant of the charter takes quite another direction. In its main brief it first contends that the law effective at the time it appealed (July 2, 1969) should be applied so as to render nugatory the Commissioner's approval of the charter application. The determination reached by the Commissioner, it is said, was not a final judgment which ended the status of the bank's incorporators, a number of whom were at the time directors and officers of Peoples Trust Company of New Jersey, of which the Montvale bank is an affiliate — and therefore the quoted prohibition of *L.* 1968, *c.* 415, § 6 (*N. J. S. A.* 17 :9A–3.1) was fully effective.

■ Approval of the charter here under attack came down on June 17, 1969, over the signature of Deputy and Acting Commissioner of Banking and Insurance Wesner. That date was well before the effective date of the Branch Banking Act of 1968, namely, July 17, 1969. Accordingly, our holding in *In re Springfield State Bank, above,* 107 *N. J. Super.* at 233–234, is dispositive of the argument now made. Pendency of the appeal did not make applicable the prohibitory section of the statute, *N. J. S. A.* 17 :9A–3.1, which could only apply to a factual situation existing subsequent to its effective date. The chartering of an affiliate bank was not illegal at the time the charter for Peoples Bank of Montvale was approved. See *National Community Bank of Rutherford v. Howell,* 106 *N. J. Super.* 317, 322 (App. Div. 1969), citing *In re Kenilworth State Bank,* above.

Notwithstanding the decision in the *Springfield State Bank* case, County Trust Company maintains that we should apply *N. J. S. A.* 17:9A–3.1 in resolving this appeal. It relies particularly on *Whitney Nat'l Bank in Jefferson Parish v. Bank of New Orleans & Trust Co.*, 211 *F. Supp.* 576 (D. D. C. 1962), aff'd 116 *U. S. App D. C.* 285, 323 *F.* 2d 290 (1963), rev'd on other grounds, 379 *U. S.* 411, 85 *S. Ct.* 551, 13 *L. Ed.* 2d 386 (1965), and the subsequent litigation in *Whitney Nat'l Bank in Jefferson Parish v. James,* 189 *So.* 2d 430 (La. Ct. App. 1966), *cert.* den. 249 *La.* 759, 191 *So.* 2d 140 (Sup. Ct. 1966), where the extremely complex factual situation is well summarized.

The case before us is clearly distinguishable on several grounds. First, the Commissioner here, unlike the Comptroller of Currency in *Whitney,* considered the public policy underlying the new act, the matter being raised in the record. Second, an affiliate bank was not, at the date of the charter approval here in question, in contravention of our banking laws, whereas the authorization given the bank in *Whitney* was clearly contrary to Louisiana's then effective branch banking law. Indeed, that bank was a subterfuge for indirectly controlling an illegal affiliate bank by utilizing the guise and nomenclature of a branch bank, while here Peoples Bank of Montvale was a permissible affiliate bank designed to be independently structured and operated. And third, the Louisiana statute had no future effective date as did our Branch Banking Act of 1968, and so there was no grace period to permit of the disposition of pending matters. *Whitney* should be contrasted with *First Nat'l Bank in Billings v. First Bank Stock Corp.,* 306 *F.* 2d 937 (9 Cir. 1962).

On analysis, County Trust Company's main brief is, at bottom, devoted to the validity of the affiliate relationship existing between Peoples Bank of Montvale and Peoples Trust of New Jersey, a matter settled by our Supreme Court in the *Kenilworth State Bank* case, 49 *N. J.* 330. It was legally not disqualifying that Peoples Trust was

148

closely involved in the organization of the Montvale bank
as a sponsoring bank. Without question, the nature of the
affiliate relationship was a matter for consideration by the
Banking and Insurance Commissioner. Applicant Peoples
Bank of Montvale disclosed at the very onset of the hear-
ings the fact that the new bank would be an affiliate of
Peoples Trust. The exact interests of the incorporators and
Peoples Trust in stock distribution were disclosed in the
testimony of Edward A. Jesser, Jr., president of Peoples
Trust. The subscription agreement was received in evidence
and testified to by Jesser and Kenneth C. Fisher, executive
vice-president of Peoples Trust. The objectors were allowed
to question the applicant's witnesses at length about the
affiliate relationship. There having been a full disclosure
and a complete opportunity afforded to explore the relation-
ship of the officers and directors of Peoples Trust to the new
affiliate, there can be no substance in any argument that
there was resort to a subterfuge. See *National Community
Bank of Rutherford v. Howell,* above, 106 *N. J. Super.*
at 322.

 County Trust Company also contends that since the
incorporators of the Montvale bank are not the "true and
only parties in interest," as they asserted in their affidavits
presented in connection with the charter application, we
should declare the Commissioner's approval null and void.
The basis of this argument is *N. J. S. A.* 17:9A–9 which re-
quires that

A. The certificate of incorporation of every bank and savings bank
shall be submitted to the commissioner within 60 days after its
execution, together with an affidavit made by each of the incorpora-
tors, setting forth:

\* \* \* \* \* \* \* \*

(3) that, except as otherwise stated in the affidavit, the incorpora-
tors are the true and only parties in interest; \* \* \*

The situation with respect to the affidavits in this case is
identical to that in *National Community Bank of Rutherford*

*v. Howell*, above, decided July 1, 1969, after the Peoples Bank of Montvale charter had been approved. The affidavits filed with the Commissioner in *Howell* stated that the affiants were each "acting on [their] own behalf as an incorporator of the proposed bank and to [their] knowledge and belief the incorporators * * * are the true and only parties in interest." As fully developed at the hearing in that case, the fact was that the incorporators contemplated, and soon after entered into, a contract with Peoples Trust of Bergen County (the real sponsor of the applicant bank, which would be an affiliate thereof) for assignment to the shareholders of Peoples Trust of an aggregate of not less than 53% of the common capital stock of the applicant bank. Such, too, was the case here. The *Howell* court held that there was thus an "inexcusable falsity" in the affidavits, not to be condoned by the court either in that case or as a precedent for practice in other cases. However, this was held not to be fatal to the application, for

* * * the statute does not require substantively that the incorporators shall be the only parties in interest, but only that the affidavit shall reveal whether or not they are. The true facts were developed in full on the hearing before the Commissioner. Neither he nor the objector was prejudicially misled by the affidavits. [106 *N. J. Super.* at 322]

And this was precisely the situation in the present case. There is no allegation or evidence that either County Trust Company, as objector, or the Acting Commissioner was misled as to the true relationship of the incorporators to the bank.

This brings us to County Trust Company's supplemental brief, addressed to events subsequent to the approval of the charter and the filing of its original brief and appendix with this court on September 17, 1969. The supplemental brief was filed pursuant to our order of October 29, 1969 granting the objector's motion to supplement the record and for leave to file such a brief.

As noted above, the charter approval given by Acting Commissioner Wesner included the reservation that the officers who would have control or supervision of the Montvale bank's operations, and who were "acceptable to me, will be engaged prior to the request for a Certificate of Authority to commence business." Pursuant to that reservation, and as required by statute, the applicant incorporators sought to qualify Peter H. Christensen as president and chief executive officer of the proposed bank. The matter was considered at a so-called "continuation hearing" held October 2, 1969.

On September 30, 1969 County Trust Company, through its present attorneys, wrote Deputy Commissioner Wesner requesting that the incorporators of Peoples Bank of Montvale, 44 in number, be produced at the scheduled October 2 hearing. The purpose was "to inquire as to the truth or falsity of the statements contained in the affidavits of the incorporators," especially as they related to the matter we have discussed above, namely, that the incorporators were the "true and only parties in interest." No such request had ever been made during the pendency of the hearings on the application for the charter itself, a period extending from May 14, 1968 to April 8, 1969. After argument at the beginning of the October 2 hearing, Deputy Commissioner Wesner denied the request, and that denial was confirmed in the formal decision of the Commissioner dated October 24, 1969.

The objector's last-minute request was not timely. It now argues that the October 2 hearing for the purpose of qualifying Christensen actually constituted part of the application for the bank charter. Clearly, that is not so. The hearings on the bank charter and the hearing to qualify Christensen were two entirely different matters. Indeed, in approving the charter the Commissioner had expressly reserved for subsequent determination the qualifications of the officers to be engaged by the Montvale bank, a procedure expressly approved in *National Community Bank of Rutherford v. Howell,* above.

There was nothing which constrained the objecting bank from requesting that the incorporators be produced during the extended hearings on the charter application, as was done in *In re Hamilton State Bank,* 106 *N. J. Super.* 285 (App. Div. 1969). Instead, and obviously inspired by the decision in that case, the objector sought to recover lost ground by making its *ex parte* application that the Peoples Bank of Montvale, on less than 24 hours' notice, produce 44 incorporators, and this without an opportunity to be heard on the merits of the application. One can only view the request as a delaying tactic.

Entirely aside from what we have said, the offer of proof made by the attorney for County Trust Company was nothing more than what he had already indicated in his September 30 letter, namely, to determine if the incorporators' affidavits were true or false. As the Commissioner properly observed, this would not change any of the material facts in the record which were the basis of his earlier approval of the charter. The affidavits *were* false, but there was no prejudice since the true facts had been fully developed at the charter hearings, and neither the Acting Commissioner nor the objector was prejudicially misled by the affidavits. *National Community Bank of Rutherford v. Howell,* above, 106 *N. J. Super.* at 322. Incidentally, the application and arguments of the objector were silent as to the fact that the testimony of 12 of the incorporators, who were also proposed as directors, had been taken at the charter hearings. As witnesses, they were available for the kind of questioning that County Trust Company now claims it wanted to employ at the October 2 hearing.

A second argument advanced in the supplemental brief of the objector is that the hearings which culminated in the decision of June 17, 1969 did not comply with *N. J. S. A.* 17:1–8.8. That section of the statute provides:

> Any hearing pursuant to this Title may be held before the commissioner, or before any deputy commissioner or any employee of the department authorized by the commissioner for such purpose. Any such person, other than the commissioner, shall report his findings, in writing, to the commissioner with or without recommendation. Such report shall be submitted to the party or parties to the hearing who shall be entitled to file exceptions thereto prior to the commissioner's determination. Such report, if adopted by the commissioner, may be the basis of any determination made by him. The commissioner may dispense with the preparation of such report and determine the matter upon the record presented, allowing the party or parties to the hearing the opportunity to file briefs or present oral argument prior to his determination. * * *"

 The hearings on the charter application were conducted by Deputy Commissioner Wesner. County Trust Company requested and was granted oral argument before him at the April 8, 1969 hearing. Others who participated were similarly afforded an opportunity for summation. The decision of June 17, 1969 was rendered by Wesner, not only as Deputy but also as Acting Commissioner of Banking and Insurance. Thus, the decision to grant the charter was rendered by the very person who heard the evidence and before whom final arguments were made. We fail to see how what was done did not comply with *N. J. S. A.* 17:1–8.8. County Trust Company, through its attorney, cannot complain, for it did have an opportunity to make "an impressionable contact with the powers of decision." *Fifth Street Pier Corp. v. Hoboken,* 22 *N. J.* 326, 337 (1956).

 We are referred by the objector to the Administrative Procedure Act of 1968 (*L.* 1968, *c.* 410; *N. J. S. A.* 52:14B–1 *et seq.*), and particularly *N. J. S. A.* 52:14B–10(c). That statute cannot apply to the charter hearings because *N. J. S. A.* 52:14B–13 states that nothing in the act shall be deemed to affect any agency proceedings initiated prior to the effective date thereof (September 1, 1969). Nor can it apply to the October 2, 1969 hearing because the determination of the qualification of the chief executive officer dates from the time of the filing of the Acting Com-

missioner's decision on June 17, 1969, when that specific issue was reserved for further hearing and determination.

Although County Trust Company argues that it did not have an opportunity to submit oral argument or a brief to the Commissioner, it did address a letter memorandum to him on October 23, 1969. The letter did not argue the issue of Christensen's qualifications, the subject of the October 2 hearing, but rather the question as to the applicability of the statute to all proposed officers. That the letter memorandum did have an effect is demonstrated by the fact that the Commissioner, in his decision of October 24, adopted the bank's argument that there would have to be hearings as to all other officers. To that extent, he modified the preliminary determination made by Deputy Commissioner Wesner at the October 2 hearing when he said he would require that only the chief executive officer be produced for hearing and approval.

█ Finally, the supplemental brief argues that the Commissioner must examine all proposed officers as to their qualifications, experience and character, before issuing his approval, and clearly before issuing a certificate of authority, citing the requirements of *N. J. S. A.* 17:9A–11(D)(3).

As to the first part of that argument, *National Community Bank of Rutherford v. Howell,* above, is dispositive. We there observed that

* * * the statute does not necessarily call for a hearing and determination *before* approval of the charter of the qualifications of all operating officers eventually selected. The act calls for a hearing in respect of qualifications of "the *proposed* officers," etc. If, for reasons of practicality familiar to the Commissioner as an expert, less than all the eventual operating officers had been selected by applicant by the close of the hearing, we regard it as not contrary to the statute, sensibly construed, to permit the Commissioner to defer his investigation and approval in this regard in respect of those not yet selected. However, the act clearly contemplates that a hearing on the qualifications of *all* eventual officers should be held on notice to all parties in interest and a favorable determination made thereon before the bank is allowed to open for business. We assume this will be done in this case. [106 *N. J. Super.* at 323]

With regard to the examination and approval by the Commissioner of all proposed officers before issuing his certificate of authority, that is exactly what the Commissioner directed be done here when he handed down his determination of October 24, 1969.

Finding no merit in any of the points raised by the objecting bank, we affirm.